**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF FLORIDA**
**TAMPA DIVISION**

COREY MCGHEE,

       Petitioner,

v.                              Case No. 8:18-cv-2358-T-33AEP

SECRETARY, DEPARTMENT
OF CORRECTIONS,

       Respondent.
_____/

## <u>ORDER</u>

Corey McGhee,[1] a Florida inmate, filed a petition for writ of habeas corpus under 28 U.S.C. § 2254 (Doc. 1) challenging his Polk County conviction.  In the response (Doc. 8), Respondent does not contest the petition's timeliness.  McGhee filed a reply.  (Doc. 9).  Upon review, the petition will be DENIED.

### Procedural History

McGhee was convicted after a jury trial of attempted second degree murder and sentenced to 20 years in prison.  (Doc. 8-4, Exs. 2, 3).  The state appellate court *per curiam* affirmed the conviction and sentence.  (Doc. 8-4, Ex. 6).  After McGhee's initial postconviction motion under Florida Rule of Criminal Procedure 3.850 was dismissed, he filed a second postconviction motion, and an amendment to the motion.  (Doc. 8-5, Exs. 10-12, 14).  The state court summarily denied McGhee's claims.  (Doc. 8-5, Exs. 13, 17).

---

[1] In the state court record, Petitioner's first name is sometimes spelled "Cory" and his last name is sometimes spelled "McGee."  This Court will use the spellings "Corey" and "McGhee," which Petitioner uses in his federal habeas petition.

The state appellate court *per curiam* affirmed the denial of relief.  (Doc. 8-5, Ex. 23).  The state appellate court also denied McGhee's habeas petition alleging ineffective assistance of appellate counsel, filed under Florida Rule of Appellate Procedure 9.141.  (Doc. 8-5, Exs. 20, 22).

### Facts[2]

Corey McGhee, Ryan Pawl, John Hagestad, and Steven Reid lived in a camp in a wooded area near U.S. Route 98 and Duff Road in Polk County, Florida.  Each man had his own tent in the camp.  On August 8, 2014, McGhee and Pawl went to Hope House to take showers and get lunch.   On their way back, they bought beer at a Circle K convenience store. When they returned to the camp, they began drinking the beer and playing cards with Hagestad.  As McGhee became increasingly irritable, however, the gathering broke up, and Hagestand and Pawl headed to their tents.   It appears that McGhee's irritability was at least partly due to an ongoing disagreement over whether the others would move out of the camp.[3]

As Pawl walked to his tent, McGhee said that he would have Steven Reid beat Pawl up when Reid got out of jail.  McGhee, who was holding a pocketknife, took a step toward

_____

[2] This factual summary is based on the trial transcript and appellate briefs.

[3] When asked, "what was the event that occurred around the time that John [Hagestad] went to his tent?" Pawl answered:

> Cory was getting more and more belligerent as time progressed.  The past, I would say a good month before the night of the incident, day by day he was getting more and more irritated with, as far as I could tell, it was his life.  He didn't want - - really want either me or Johnny around it seemed like.  However, that had become my home, too.  And I helped build the place and set it all up and hang tarps and dig out trenches and cut wood and I wasn't about to take off just because he wants to, you know, be by himself.  In my opinion, if he wanted to be by himself, go off somewhere, but you're not going to kick me out of public land.

(Doc. 8-3, Ex. 1, Vol. 2, doc. p. 167).

Pawl.  Pawl shoved McGhee.  McGhee fell onto a reclining chair, knocking it over.  Pawl said to McGhee, "don't worry, Steve will get out in a month or so and then he can fight for you."  (Doc. 8-3, Ex. 1, Vol. 3, doc. p. 171).

Once inside his tent, Pawl lied down and began reading a book.  He heard McGhee scream, "I don't need anybody to fight for me."  (*Id.*).  McGhee then swung a hatchet through Pawl's tent, deeply cutting Pawl's right leg.  Despite his injury, Pawl charged McGhee and they wrestled over the hatchet and pocketknife.  During the struggle, McGhee stabbed Pawl in the ribs with the pocketknife and said that he was going to kill Pawl.  Eventually, McGhee left and headed towards Route 98.  Pawl called out to John Hagestad, who helped Pawl to the road and flagged down a passing car to call 911.

McGhee traveled on foot to a nearby thrift store, where he complained of chest pains.  After someone from the store called 911, McGhee was treated by EMS and transported to a hospital.  There, he waived his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), and gave an unrecorded statement to Detective Jeff Clark.  McGhee told Detective Clark that he was sitting in a chair when he and Pawl began arguing.  McGhee stated that Pawl forcefully grabbed him around the throat and squeezed his throat.  McGhee said that he was able to reach the hatchet, and that he hit Pawl with the hatchet to defend himself.  McGhee said that Pawl threw him from the chair, took the hatchet, held it to McGhee's throat, and told McGhee that he could kill him.  McGhee stated that as soon as he could get away, he ran to the thrift store.  McGhee initially denied possessing a knife, but later could not recall whether he had a knife.  McGhee was arrested and charged with attempted second degree murder of Pawl.

## Standard Of Review

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") governs this proceeding. *Carroll v. Sec'y, DOC*, 574 F.3d 1354, 1364 (11th Cir. 2009). Habeas relief can only be granted if a petitioner is in custody "in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). Section 2254(d) provides that federal habeas relief cannot be granted on a claim adjudicated on the merits in state court unless the state court's adjudication:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

A decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor,* 529 U.S. 362, 412-13 (2000). A decision is an "unreasonable application" of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id.* at 413.

The AEDPA was meant "to prevent federal habeas 'retrials' and to ensure that state-court convictions are given effect to the extent possible under law." *Bell v. Cone*, 535 U.S. 685, 693 (2002). Accordingly, "[t]he focus . . . is on whether the state court's application of clearly established federal law is objectively unreasonable, and . . . an unreasonable application is different from an incorrect one." *Id.* at 694. *See also Harrington v. Richter*, 562 U.S. 86, 103 (2011) ("As a condition for obtaining habeas corpus from a federal court,

a state prisoner must show that the state court's ruling on the claim being presented in federal court was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement.").

The state appellate court affirmed the judgment and sentence and the denial of postconviction relief without discussion. It also denied McGhee's state habeas petition without discussion. These decisions warrant deference under § 2254(d)(1) because "the summary nature of a state court's decision does not lessen the deference that it is due." *Wright v. Moore,* 278 F.3d 1245, 1254 (11th Cir. 2002). *See also Richter,* 562 U.S. at 99 ("When a federal claim has been presented to a state court and the state court has denied relief, it may be presumed that the state court adjudicated the claim on the merits in the absence of any indication or state-law procedural principles to the contrary.").

### Exhaustion Of State Remedies; Procedural Default

A federal habeas petitioner must exhaust his claims for relief by raising them in state court before presenting them in his petition. 28 U.S.C. § 2254(b)(1)(A); *O'Sullivan v. Boerckei*, 526 U.S. 838, 842 (1999) ("[T]he state prisoner must give the state courts an opportunity to act on his claims before he presents those claims to a federal court in a habeas petition.").

The requirement of exhausting state remedies as a prerequisite to federal review is satisfied if the petitioner "fairly presents" his claim in each appropriate state court and alerts that court to the federal nature of the claim. *Picard v. Connor*, 404 U.S. 270, 275-76 (1971). "If the petitioner has failed to exhaust state remedies that are no longer available, that failure is a procedural default which will bar federal habeas relief, unless either the cause and prejudice or the fundamental miscarriage of justice exception is established."

*Smith v. Jones*, 256 F.3d 1135, 1138 (11th Cir. 2001). *See also Bailey v. Nagle*, 172 F.3d 1299, 1305 (11th Cir. 1999) ("[F]ederal courts may treat unexhausted claims as procedurally defaulted, even absent a state court determination to that effect, if it is clear from state law that any future attempts at exhaustion would be futile. . . . A habeas petitioner can escape the procedural default doctrine either through showing cause for the default and prejudice . . . or establishing a 'fundamental miscarriage of justice.'").

### Ineffective Assistance Of Counsel

Claims of ineffective assistance are analyzed under the test set forth in *Strickland v. Washington*, 466 U.S. 668 (1984). *Strickland* requires a showing of deficient performance by counsel and resulting prejudice. *Id.* at 687. To show deficient performance, McGhee must demonstrate that "counsel's representation fell below an objective standard of reasonableness." *Id.* at 687-88. A court must consider whether, "in light of all the circumstances, the identified acts or omissions [of counsel] were outside the wide range of professionally competent assistance." *Id.* at 690. However, "counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." *Id.*

McGhee must demonstrate that counsel's alleged error prejudiced the defense because "[a]n error by counsel, even if professionally unreasonable, does not warrant setting aside the judgment of a criminal proceeding if the error had no effect on the judgment." *Id.* at 691-92. He must establish "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Id.* at 694. Obtaining relief on a claim of ineffective assistance of counsel is difficult on federal habeas

review because "[t]he standards created by *Strickland* and § 2254(d) are both 'highly deferential,' and when the two apply in tandem, review is 'doubly' so."  *Richter*, 562 U.S. at 105 (citations omitted).  *See also Burt v. Titlow*, 571 U.S. 12, 15 (2013) (this doubly deferential standard of review "gives both the state court and the defense attorney the benefit of the doubt.").

*Strickland* applies to claims of ineffective assistance of appellate counsel.  *Smith v. Robbins*, 528 U.S. 259, 285 (2000); *Heath v. Jones*, 941 F.2d 1126, 1130 (11th Cir. 1991). To succeed on such a claim, McGhee must establish a reasonable probability that, but for appellate counsel's objectively unreasonable performance, he would have prevailed on appeal.  *Robbins*, 528 U.S. at 285-86.

## Discussion

Ground One

McGhee was charged with battery on Deputy Jessica Cranor, who responded to the thrift store.  The trial court granted McGhee's motion to sever that charge from the charge of attempted second degree murder of Ryan Pawl.  Accordingly, the trial only concerned the attempted murder charge.  During her testimony, however, Deputy Cranor referenced another crime having been committed against her.  Counsel immediately objected and moved for a mistrial on the basis that Deputy Cranor's testimony violated the severance order:

> [PROSECUTOR]: [ ] Deputy Cranor, did you have any other substantial involvement in this case?
>
> [DEPUTY CRANOR]:  Other than the extra charge that was committed against myself - -
>
> [COUNSEL]: Objection, Your Honor.  May we do a sidebar?

THE COURT: Yes.

(The attorneys, the defendant and the court reporter approached the bench and there was a discussion out of the hearing of the jury as follows:)

[COUNSEL]: I move for a mistrial based on the prior severance of the charges.

[PROSECUTOR]: Your Honor, I guess the state's position is that she didn't directly say what he did. It was he was responsible. I would ask for a curative instruction, given the fact that we're so far into the trial. I ask that you wait until - - that you[ ] reserve - -

THE COURT: I will reserve and wait until deliberations. I'll give them an instruction not to consider it.

[COUNSEL]: Yes, sir.

(The attorneys, the defendant and the court reporter left the bench.)

THE COURT: The jury will disregard the prior answer by the witness.

(Doc. 8-3, Ex. 1, Vol. 2, doc. pp. 214-15). The trial court later denied McGhee's motion for mistrial. (Doc. 8-2, Ex. 1, Vol. 1, doc. pp. 143-44).

McGhee argues that the trial court erred in denying his motion for a mistrial, resulting in a federal due process violation. McGhee's federal claim is unexhausted because McGhee relied entirely on state law when he raised the alleged trial court error on direct appeal. (Doc. 8-4, Ex. 4, doc. pp. 22-23). *See Pearson v. Sec'y, Dep't of Corr.*, 273 Fed. App'x 847, 849-50 (11th Cir. 2008) ("The exhaustion doctrine requires the petitioner to 'fairly present' his federal claims to the state courts in a manner to alert them that the ruling under review violated a federal constitutional right."); *Zeigler v. Crosby*, 345 F.3d 1300, 1307 (11th Cir. 2003) ("To present a federal constitutional claim properly in state court, 'the petitioner must make the state court aware that the claims asserted present federal constitutional issues.'" (quoting *Snowden v. Singletary*, 135 F.3d 732, 735 (11th Cir.

1998))). McGhee cannot return to state court to raise the federal claim in a second appeal. *See* Fla. R. App. P. 9.140(b)(3) (a notice of appeal must be filed within 30 days after rendition of the sentence). Accordingly, his claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. As McGhee does not establish that an exception applies to excuse the default, his claim is barred from review.[4]

In his reply, McGhee contends that he raised the substance of this claim in "issue IX" of his state postconviction motion, as well as in "issue III" of his state habeas petition. Both of these claims allege ineffective assistance of counsel, and McGhee references ineffective assistance in his federal habeas petition. Accordingly, this Court liberally interprets McGhee's federal habeas petition as raising the ineffective assistance claims presented in the identified state court grounds.

In claim 3 of his state habeas petition, McGhee claimed that appellate counsel was ineffective for not arguing that the trial court erred when it denied a mistrial simply because another trial would be too inconvenient. (Doc. 8-5, Ex. 20, doc. pp. 139-40). In support of his claim, McGhee references the instructions read to the jury at the beginning of trial. Consistent with Florida's standard instructions, the jurors were informed that "[a]ny juror who violates" rules governing juror conduct "jeopardizes the fairness of the proceedings and a mistrial could result that would result in the entire trial process starting over. A mistrial is a tremendous expense and inconvenience to the parties, the Court and the taxpayers." (Doc. 8-3, Ex. 1, Vol. 2, doc. pp. 111-12). *See* Fla. Std. Jury Inst. 1.1 (Crim.).

_____

[4] Even if McGhee had presented a federal claim in his state proceedings, this Court would find that his claim is not cognizable. As addressed in the discussion of his related ineffective assistance of appellate counsel claim, McGhee's argument concerns an issue of state law–whether the trial court properly applied Florida's standard for granting a mistrial. A state law claim, even if framed to raise a federal violation, is not cognizable on federal habeas review. *Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988).

McGhee claimed in his state habeas petition that he "believe[d] the court's reluctance to grant the mistrial was based on the above." (Doc. 8-5, Ex. 20, doc. p. 140).

In Florida, "[a]n order granting mistrial is required only when the error upon which it rests is so prejudicial as to vitiate the entire trial, making a mistrial necessary to ensure that the defendant receives a fair trial." *Dessaure v. State*, 891 So.2d 455, 464-65 (Fla. 2004) (citing *Cole v. State*, 701 So.2d 845, 853 (Fla. 1997)). The trial court denied the motion for mistrial after reviewing this standard and finding that Deputy Cranor made only "an isolated, inadvertent, and brief statement" that was not solicited by the prosecution. (Doc. 8-2, Ex. 1, Vol. 1, doc. pp. 143-44). The trial court did not mention the inconvenience of a retrial in explaining its ruling. (*Id.*).

The state appellate court's decision reflects that a challenge to the trial court's ruling on the basis proposed by McGhee would not have succeeded under Florida's mistrial standard. This is a determination of state law to which this Court defers. "It is a 'fundamental principle that state courts are the final arbiters of state law, and federal habeas courts should not second-guess them on such matters.'" *Herring v. Sec'y, Dep't of Corr.*, 397 F.3d 1338, 1355 (11th Cir. 2005) (quoting *Agan v. Vaughn*, 119 F.3d 1538, 1549 (11th Cir. 1997)). Therefore, "[a]lthough an ineffective-assistance-of-counsel claim is a *federal* constitutional claim, which we consider in light of the clearly established rules of *Strickland*, when 'the validity of the claim that [counsel] failed to assert is clearly a question of *state* law, . . . we must defer to the state's construction of its own law.'" *Will v. Sec'y, Dep't of Corr.*, 278 Fed. App'x 902, 908 (11th Cir. 2008) (quoting *Alvord v. Wainwright*, 725 F.2d 1282, 1291 (11th Cir. 1984)). McGhee has not shown that the state court's decision was contrary to or involved an unreasonable application of clearly established federal law,

or was based on an unreasonable determination of fact.

In claim 9 of his postconviction motion, McGhee argued that trial counsel was ineffective in "conceding to the erroneous giving of a curative jury instruction" after Deputy Cranor's testimony. (Doc. 8-4, Ex. 10, doc. p. 144). McGhee asserted that counsel should have objected because the curative instruction prejudiced him by calling more attention to his other criminal charge. The state court denied this claim:

> Claim 9 alleges trial counsel conceded to the State's suggestion of a curative jury instruction after testimony surfaced that another criminal charge had been filed against the Defendant. The Defendant's motion acknowledges trial counsel moved for a mistrial, which was denied. Trial counsel therefore did not concede to the curative jury instruction, having made the appropriate objection by moving for a mistrial. That the request was denied by the trial court is not the fault of trial counsel. With the request denied, either a curative instruction could be given, or nothing would be done. Any prejudicial effect based upon this decision by the Defendant after the fact is based merely on speculation. Claim 9 is DENIED.

(Doc. 8-5, Ex. 13, doc. p. 56).

The state court did not unreasonably find that McGhee failed to demonstrate prejudice. Although the curative instruction again raised the matter of Deputy Cranor's testimony, jurors are presumed to follow the court's instructions. *See Brown v. Jones*, 255 F.3d 1273, 1280 (11th Cir. 2001) ("We have stated in numerous cases . . . that jurors are presumed to follow the court's instructions.").

Thus, it is presumed that the jurors ignored Deputy Cranor's answer, and, as indicated in the state court's order, any contention that the jury did not do so and instead held the testimony against McGhee is too speculative and conclusory to warrant relief. *See, e.g., United States v. Perez*, 30 F.3d 1407, 1411 (11th Cir. 1994) ("When a court gives a direct and explicit curative instruction regarding improper testimony, it supports the court's

decision not to grant a mistrial by decreasing the possibility of undue influence."). *See also Wilson v. Sec'y, Fla. Dep't of Corr.*, ___ Fed. App'x ___, 2019 WL 1777089 at *2 (11th Cir. Apr. 23, 2019) ("[I]neffective assistance of counsel cannot be proven via conclusory assertion."); *Tejada v. Dugger*, 941 F.2d 1551, 1559 (11th Cir. 1991) (a petitioner's vague and conclusory statements, unsupported by specific facts, cannot sustain an ineffective assistance of counsel claim).

Accordingly, McGhee fails to show a reasonable probability that the outcome would have been different had no curative instruction been given. McGhee has not established that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim. Consequently, he is not entitled to relief on Ground One.

Ground Two

McGhee contends that trial counsel was ineffective in failing to investigate his case. McGhee alleges that counsel neglected to obtain certain items of evidence, failed to challenge the State's witnesses or exhibits, and did not call witnesses. McGhee argues that counsel therefore failed to "put the state's wholly circumstantial case to any meaningful adversarial testing process." (Doc. 1, p. 17). To the extent McGhee now brings the same claim that he presented in Ground One of his amended habeas petition, he cannot obtain relief. The state court denied this claim:

> Defendant's first claim alleges trial counsel was ineffective for failing to adequately investigate and test the State's case. Defendant alleges several examples, many of which are repeated in later claims.
>
> Defendant first alleges that trial counsel was ineffective for failing to investigate and present evidence that the Defendant and the victim did not visit a Circle K convenience store prior to the incident as testified by the victim. The Defendant claims he was in fact alone when he purchased the alcohol at this store. As to this portion of the claim, the Defendant has failed

to sufficiently allege any prejudice. Even if surveillance footage were presented showing the Defendant was alone when he purchased the alcohol, this does nothing to establish any defense, and instead is merely an attempt to impeach the credibility of the victim on an immaterial point. The Defendant himself does not challenge that he purchased the alcohol and then went to the camp. The Defendant also speculates that there might be any existing surveillance footage, or employees that recall seeing the Defendant alone on the day in question purchasing alcohol.

Next the Defendant alleges trial counsel was ineffective for failing to present evidence that he had been in a previous physical altercation with the victim. The victim did not testify that he had never had any prior violent altercations with the Defendant. The Defendant alleges trial counsel should have obtained text messages sent between the Defendant, and another individual, where the Defendant references a violent incident that occurred a few days prior. Such evidence would be inadmissible as hearsay. Such evidence would also show the Defendant's motive for initiating the attack against the victim. As the evidence would be inadmissible and very likely harmful to the Defendant, he has failed to show either prong of the *Strickland* test.

The Defendant also raises that trial counsel should have argued the tent the victim was in at the time the attack occurred was not ripped, contradicting the victim's testimony that he was inside the tent when the Defendant attacked him with a hatchet. Trial counsel did in fact make such an argument to the jury, and pointed out the inconsistencies between the victim's testimony with the physical evidence.

The Defendant next alleges trial counsel allowed Deputy Clark to present misleading testimony regarding the Defendant's statement. The Defendant alleges at the time of making the statement he described two events, however, Deputy Clark perceived his statement as discussing a singular event between the Defendant and the victim. The Defendant himself acknowledges this is "very possible" that this was due to the Defendant's inebriation at the time. Accordingly, his own claim shows there is no prejudice, and fails to establish what admissible evidence trial counsel should have investigated and presented to establish this current allegation.

Finally, the Defendant claims trial counsel should have presented a 911 recording made by the owner of "A Lot For Less" thrift store, where the owner called 911 following Defendant's request for her to do so. Defendant alleges this allowed the State to establish his unlawful flight, and that the Defendant also sought assistance from law enforcement following the attack. The State did not argue any unlawful flight following the Defendant leaving the scene after he attacked the victim. The Defendant's motion to sever on the counts for which he was acquitted was granted, and the flight was not used to

establish guilt for the attempted murder of the victim. Likewise, the Defendant also failed to show any prejudice in failing to present that he attempted to call 911 before the victim did.

For the foregoing reasons, claim 1 is DENIED.

(Doc. 8-5, Ex. 15, doc. pp. 107-09) (court's record citation omitted).

The state court did not unreasonably conclude that McGhee failed to demonstrate ineffective assistance. First, McGhee alleged that evidence showing he went into Circle K alone would have impeached Pawl's testimony that they went into the store together. As the state court's order suggests, however, McGhee fails to establish that such evidence exists. Speculation cannot establish ineffective assistance. *See Tejada*, 941 F.2d at 1559. Further, even if the evidence showed that McGhee entered the store alone, he has not shown a reasonable probability that exposing this minor discrepancy would have affected Pawl's credibility so as to result in a different outcome at trial.

McGhee also contended that a tape of the 911 call from the thrift store would show that he was the first to seek assistance, and that he did so after being attacked. McGhee fails to show prejudice as a result of counsel's not obtaining the 911 call. Given the evidence of guilt, McGhee has not demonstrated a reasonable probability of a different outcome even if the tape could have established that he called 911 before Hagestad and Pawl, or that he called 911 in response to an alleged attack. Further, as the state court found, McGhee cannot show that the 911 call would have been relevant regarding an allegation of unlawful flight, as the State did not allege that he unlawfully fled to the store.

McGhee also argued that text messages he exchanged with an individual named Bonnie Marvin would have proven that Pawl had violently attacked him days before the offense. McGhee asserts that counsel was ineffective in not using the texts to challenge

the State's case.  This ineffective assistance claim depends on an interpretation of Florida evidentiary law.  Accordingly, this Court defers to the state court's decision that the texts would have been inadmissible. *See Will*, 278 Fed. App'x at 908.  Counsel is not ineffective for not raising a meritless issue.  *See Bolender v. Singletary*, 16 F.3d 1547, 1573 (11th Cir. 1994) ("[I]t is axiomatic that the failure to raise nonmeritorious issues does not constitute ineffective assistance.").

Next, McGhee claimed that counsel failed to challenge Detective Clark's misrepresentation of the statement McGhee made at the hospital.  McGhee contends that he told Detective Clark about two separate incidents in which he argued with Pawl, but that Detective Clark's testimony made it sound like there was only one incident.  McGhee has not demonstrated that counsel was ineffective.  As the state court pointed out, McGhee conceded that he might have made it sound like there was only one event.[5]  And as the state court also noted, evidence of a previous altercation may have hurt the defense by suggesting that McGhee had an opportunity to develop enmity towards Paul and thus possessed the "depraved mind" mental state necessary to commit attempted second degree murder.[6]

McGhee also alleged that counsel was ineffective with respect to Pawl's tent.  He claims that State's Exhibit 1C, a photograph of the tent, shows that it was not ripped (and therefore, McGhee could not have swung the hatchet through the tent, as Pawl testified).

---

[5] McGhee acknowledged, "It is very possible that due to his inebriation, the Defendant's description of events could have been misunderstood to be of a singular event."  (Doc. 8-5, Ex. 14, doc. p. 66).

[6] As discussed more thoroughly in Ground Three, *infra*, Florida courts have held that a defendant who acts with a depraved mind, as required to commit attempted second degree murder, usually knows the victim and has developed a level of enmity towards the victim.

McGhee alleges that counsel was ineffective in failing to challenge the State's witnesses and theory of the case by not asking witnesses to look at the photograph and point out the alleged rip, not obtaining the tent itself, and not testing a substance found on the tent that might have been blood. As the state court addressed, however, counsel did argue that the evidence showed Pawl's tent was not ripped as Pawl described in his testimony. (Doc. 8-3, Ex. 1, Vol. 3, doc. pp. 265-68). McGhee has not established a reasonable probability that reiterating this point by asking witnesses about the photograph or presenting the tent itself would have changed the outcome. Nor does McGhee explain the significance of any blood or lack of blood[7] on the tent or explain what testing on any blood would have revealed. His speculative assertion cannot establish ineffective assistance. *See Tejada*, 941 F.2d at 1559. Accordingly, McGhee has not shown that counsel was ineffective concerning the tent.

McGhee raises two additional allegations of ineffective assistance, which the Court finds unexhausted because McGhee did not raise them in his state postconviction motion. As McGhee cannot raise them in a second, untimely postconviction motion, *see* Fla. R. Crim. P. 3.850(b), these claims are now procedurally defaulted. *See Smith*, 256 F.3d at 1138. Alternatively, McGhee fails to show entitlement to relief. McGhee argues that he was prejudiced by counsel's failure to obtain the tent because it would have revealed a violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Giglio v. United States*, 405 U.S. 150 (1972). He also claims that counsel was ineffective for not testing blood on the

---

[7] McGhee may argue that a lack of blood on the tent would be inconsistent with Pawl's testimony that when McGhee hit him with the hatchet, "There was blood coming out all over the place in a steady stream." (Doc. 8-3, Ex. 1, Vol. 2, doc. p. 172). But counsel made this point by relying on the photograph, without the need for further evidence or testing. (Doc. 8-3, Ex. 1, Vol. 3, doc. p. 265).

pocketknife and not calling a blood spatter expert to support his version of events. McGhee's claims are too vague and speculative to warrant relief because he offers no explanation or argument to support them. *See Tejada*, 941 F.2d at 1559. *See also Johnson v. Alabama*, 256 F.3d 1156, 1187 (11th Cir. 2001) ("Johnson offers only speculation that the missing witnesses would have been helpful. This kind of speculation is 'insufficient to carry the burden of a habeas corpus petitioner.'") (citation omitted). Accordingly, McGhee has not shown that counsel was ineffective for the reasons alleged.

Throughout Ground Two, in alleging that his counsel was ineffective, McGhee states that counsel failed to subject the state's case to adversarial testing. McGhee has not specifically cited *United States v. Cronic*, 466 U.S. 648 (1984). Even reading his claim as invoking *Cronic*, however, he fails to show entitlement to relief. In *Cronic*, the Supreme Court held that, "if counsel entirely fails to subject the prosecution's case to meaningful adversarial testing, then there has been a denial of Sixth Amendment rights that makes the adversary process itself presumptively unreliable" and no specific showing of prejudice is required. *Id.* at 659.

The record demonstrates that counsel successfully filed a pre-trial motion to sever, cross-examined the State's key witnesses, moved for a judgment of acquittal, argued that the State failed to show attempted second degree murder, and asserted that the court should declare a mistrial because of a violation of the court's ruling on McGhee's motion to sever. Accordingly, despite the language he uses in describing counsel's alleged deficiencies, McGhee does not demonstrate that counsel completely failed to subject the State's case to meaningful adversarial testing such that prejudice is presumed under *Cronic*. *See, e.g., Castillo v. Fla., Sec'y of DOC*, 722 F.3d 1281, 1287 (11th Cir. 2013)

(explaining that *Cronic* requires a complete failure to test the case throughout the entire proceeding, not just at certain points in the proceeding, and finding that *Cronic* did not apply when defense counsel filed pre-trial motions, questioned and challenged prospective jurors, made an opening statement and closing argument, made objections, cross-examined witnesses, and moved for a mistrial).

McGhee fails to show that the state court's decision was contrary to, or involved an unreasonable application of, clearly established federal law, or was based on an unreasonable factual determination. He is not entitled to relief on Ground Two.

Ground Three

In Ground Three, McGhee alleges that he was denied a fair trial, due process, and the effective assistance of counsel. His subclaims fall into three categories.

A. Claims Concerning The Sufficiency Of The Evidence

The jury was instructed that to convict McGhee of attempted second degree murder, they had to find that McGhee intentionally committed an act that was "imminently dangerous to another and demonstrat[ed] a depraved mind without regard for human life." (Doc. 8-3, Ex. 1, Vol. 3, doc. p. 298). To meet this definition, an act must be "done from ill will, hatred, spite, or evil intent." (*Id.*, p. 299). McGhee claims that the State presented insufficient evidence to sustain his conviction for attempted second degree murder because it failed to prove "intent, ill will, hatred and spite, etc." beyond a reasonable doubt. (Doc. 1, p. 20).

This claim is unexhausted because McGhee did not raise it on direct appeal. (Doc. 8-5, Ex. 4). Since McGhee cannot return to state court to present the claim in a second appeal, his claim is procedurally defaulted. *See Smith*, 256 F.3d at 1138. McGhee

contends in his reply that his conviction is a fundamental miscarriage of justice. The fundamental miscarriage of justice exception applies to overcome a procedural default in an extraordinary case where a constitutional violation has probably resulted in the conviction of someone who is actually innocent. *Schlup v. Delo*, 513 U.S. 298, 327 (1995). This exception requires a petitioner's "actual" innocence, rather than mere legal insufficiency. *Johnson v. Alabama*, 256 F.3d 1156, 1171 (11th Cir. 2001). Such a "claim of innocence is . . . 'not itself a constitutional claim, but instead a gateway through which a petitioner must pass to have his otherwise barred constitutional claim considered on the merits.'" *Schlup*, 513 U.S. at 315 (quoting *Herrera v. Collins*, 506 U.S. 390, 404 (1993)). "To be credible, . . . a claim [of actual innocence] requires petitioner to support his allegations of constitutional error with new reliable evidence–whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence–that was not presented at trial." *Id.* at 324. And a petitioner must show that, in light of the new evidence, it is more likely than not that no reasonable juror would have found him guilty beyond a reasonable doubt. *Id.* at 327.

McGhee has not presented any new, reliable evidence of his actual innocence. Accordingly, he fails to establish that the fundamental miscarriage of justice exception applies to excuse the default. His challenge to the sufficiency of the evidence is barred from review.

McGhee also alleges that his appellate counsel was ineffective in not arguing that the state trial court erred in denying his motion for judgment of acquittal. McGhee presented this ineffective assistance claim in his state habeas petition. (Doc. 8-5, Ex. 20, pp. 136-38). In support of his claim, he stated that "'a motion for judgment of acquittal

should be granted in a circumstantial evidence case if the state fails to present evidence from which the jury can exclude every reasonable hypothesis except that of guilt' and 'must introduce competent evidence which is inconsistent with the defendant's theory of events.'" (*Id.*, doc. pp. 137-38).

McGhee, therefore, relied on a sufficiency of the evidence standard that is unique to circumstantial evidence cases in Florida. *See Preston v. Sec'y, Fla. Dep't of Corr.*, 785 F.3d 449, 460 (11th Cir. 2015) (noting that Florida's special standard for circumstantial evidence cases provides that "[w]here the only proof of guilt is circumstantial, no matter how strongly the evidence may suggest guilt, a conviction cannot be sustained unless the evidence is inconsistent with any reasonable hypothesis of innocence." (quoting *Thorp v. State*, 777 So.2d 385, 389 (Fla. 2000))). *See also State v. Law*, 559 So.2d 187, 188 (Fla. 1989) (in a circumstantial evidence case, the State is required to "introduce competent evidence which is inconsistent with the defendant's theory of events." (citing *Toole v. State*, 472 So.2d 1174, 1176 (Fla. 1985))). This is different from the federal standard for sufficiency of the evidence claims applied in *Jackson v. Virginia*, 443 U.S. 307 (1979),[8] which McGhee did not address in his state habeas petition.

As McGhee's ineffective assistance claim depended on an application of Florida's distinguishable and unique standard of review for circumstantial evidence cases, deference is given to the state court's determination of this underlying state law matter. *See Will*, 278 Fed. App'x at 908. *See also Herring*, 397 F.3d at 1354-55 ("The Florida Supreme Court

---

[8] *Jackson* holds that, on federal review, a petitioner is entitled to relief "if it is found that upon the record evidence adduced at the trial no rational trier of fact could have found proof of guilt beyond a reasonable doubt." 443 U.S. at 324.

has already told us how the issues would have been resolved under Florida state law had [petitioner's counsel] done what [petitioner] argues he should have done."). Accordingly, McGhee has not demonstrated that the state appellate court's decision was contrary to or involved an unreasonable application of clearly established federal law.[9]

McGhee also states in his reply that he intends to raise the ineffective assistance claim presented in claim 10 of his postconviction motion, which concerned the motion for judgment of acquittal. The Court liberally construes McGhee's federal habeas petition, which addressed ineffective assistance, as raising the argument in claim 10 of the postconviction motion that involved the motion for judgment of acquittal.

In claim 10, McGhee asserted that trial counsel was ineffective in not arguing when moving for a judgment of acquittal that his actions were "extremely reckless" or an "impulsive overreaction" to an earlier provocation by Pawl and thus were insufficient to demonstrate a depraved mind. (Doc. 8-5, Ex. 12, doc. pp. 43-44). McGhee claims that counsel instead conceded that he was guilty of a lesser-included offense. The state court denied McGhee's claim:

> Claim 10 alleges trial counsel was ineffective for failing to argue for a judgment of acquittal and/or failing to move for a new trial. The Defendant first claims trial counsel conceded guilt to a lesser included offense in the motion for judgment of acquittal. However, the statement by trial counsel was not a concession of guilt, but rather a concession as to the State having met its burden for the purpose of a judgment of acquittal on a lesser included offense only. The remainder of this claim is merely a disagreement with the

---

[9] To the extent McGhee intends to argue that his appellate counsel's ineffectiveness is cause to excuse the default of his substantive sufficiency of the evidence claim, his argument must fail. Although constitutionally ineffective assistance may constitute cause, McGhee's failure to show that his appellate counsel was ineffective precludes him from establishing cause. *See, e.g., Phillips v. Price*, 2015 WL 1840535 at *23 (M.D. Ala. 2015) ("If Petitioner cannot prevail on a separate ineffective assistance of appellate counsel claim, then he cannot prevail on an argument that ineffective assistance caused the procedural default." (citing *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000))).

evidence, and the jury's verdict.  Claim 10 is DENIED.

(Doc. 8-5, Ex. 13, doc. p. 56).

The record shows that counsel moved for a judgment of acquittal after the State

rested:

> THE COURT: [ ] Do you have a motion right now?
>
> [COUNSEL]: I don't, Judge.  I think it is a credibility issue.
>
> THE COURT: Okay.  I'll give you a couple of minutes to talk to [McGhee] about [testifying].  Do you have other witnesses?
>
> [COUNSEL]: No, I don't.  Actually I take it back on the motion for judgment of acquittal.  I don't believe that there is any evidence to support an attempted second degree murder charge.  The reckless disregard for human life, ill will, hatred, spite.  I think at best it is - - we have evidence of an aggravated battery actually.  Manslaughter by act is a prima facie case that hasn't been met.
> . . .
>
> THE COURT: I find there has been a prima facie showing and we'll let that charge go through.

(Doc. 8-3, Ex. 1, Vol. 3, doc. pp. 234, 236).

As the state court addressed, counsel asserted that the evidence established a

lesser offense to support her argument that a judgment of acquittal for the charged offense

was warranted because the prosecution failed to establish the requisite mental state.

Accordingly, McGhee has not demonstrated deficient performance.  Further, he fails to

show a reasonable probability of a different outcome on his motion absent counsel's

statement because the trial court found that the State made a prima facie showing of the

charged offense.

Nor does McGhee show that counsel was ineffective in not arguing that a judgment

of acquittal should be granted because McGhee's behavior was, at most, extreme

recklessness or an impulsive overreaction.[10]  '[E]xtreme recklessness' or 'an impulsive

overreaction to an attack or injury is itself insufficient' to support a second degree murder

conviction" because it does not prove the ill will, hatred, spite, or evil intent necessary to

establish a depraved mind.  *Antoine v. State*, 138 So.3d 1064, 1073 (Fla. 4th DCA 2014)

(quoting *Dorsey v. State*, 74 So.3d 521, 524 (Fla. 4th DCA 2011)).

      In "most cases", the "depraved-mind element of second-degree murder . . . must be

inferred from the circumstances."  *Perez v. State*, 187 So.3d 1279, 1282 (Fla. 1st DCA

2016).  "To infer depraved mind or conduct that evokes ill will, hatred, spite, or evil intent

a court may consider the defendant's conduct prior to his use of deadly force."  *Sandhaus

v. State*, 200 So. 3d 112, 115 (Fla. 5th DCA 2016).  Here, the State presented evidence of

previous tension between Pawl and McGhee, which appears to have caused McGhee to

become irritable shortly before the incident.  *See, e.g., Light v. State*, 841 So.2d 623, 626

(Fla. 2d DCA 2003)  ("Although exceptions exist, the crime of second-degree murder is

normally committed by a person who knows the victim and has had time to develop a level

of enmity toward the victim."); *cf. Bellamy v. State*, 977 So.2d 682, 684 (Fla. 2d DCA 2008)

(finding impulsive overreaction and noting that the victim and defendant had only a brief

prior interaction without any enmity between them) and *Clark v. State*, 207 So.3d 1019,

1022 (Fla. 4th DCA 2017) (evidence was insufficient to establish ill will, hatred, spite, or evil

intent when the defendant and victim did not know each other and the defendant had

insufficient time to develop any level of enmity toward the victim).

---

[10] Even assuming *de novo* review is warranted because the state court did not expressly discuss this part of McGhee's argument, *see Davis v. Sec'y, Dep't of Corr.*, 341 F.3d 1310, 1313 (11th Cir. 2003), McGhee fails to show entitlement to relief for the same reasons addressed in the body of this Order.

Further, enough time passed after Pawl pushed McGhee into the chair for Pawl return to his tent, get inside, lie down, and begin reading a book before McGhee approached Pawl's tent and attacked him with the hatchet. This delay indicates that McGhee's actions were not impulsive. *See, e.g., Antoine*, 138 So.3d at 1073 (the case of a defendant "who had the time to consider the nature of his violent act" is not controlled by decisions regarding impulsive overreaction); *cf. Poole v. State*, 30 So.3d 696, 698-99 (Fla. 2d DCA 2010) (finding impulsive overreaction after the victim "suddenly got up" and lunged at the defendant). Accordingly, taking the evidence in the light most favorable to the State, McGhee cannot show that he was prejudiced by counsel's failure to seek a judgment of acquittal on the basis that his actions only amounted to extreme recklessness or an impulsive overreaction.

Finally, McGhee contends that counsel should have argued in moving for a judgment of acquittal that he acted in self defense and that the case was merely a credibility contest. However, self-defense "is ordinarily [a question] for the jury." *Fowler v. State*, 921 So.2d 708, 711 (Fla. 2d DCA 2006). Further, when the evidence, viewed in the light most favorable to the state, is such that the jury can reasonably infer guilt and reject a defendant's explanation of self-defense, a denial of the motion for judgment of acquittal is proper. *Cruz v. State*, 189 So.3d 822, 826-27 (Fla. 4th DCA 2015). McGhee has not established that a motion would have succeeded under this standard. Nor can McGhee show that counsel was ineffective in not raising credibility when moving for a judgment of acquittal. *See Washington v. State*, 737 So.2d 1208, 1211 (Fla. 1st DCA 1999) ("The credibility and probative force of conflicting testimony should not be determined on a motion for judgment of acquittal." (quoting *Lynch v. State*, 293 So.2d 44, 45 (Fla. 1974))).

McGhee has not shown that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable determination of fact.

B.   Immunity From Prosecution

Next, McGhee claims that he was entitled to immunity from prosecution because he acted in self defense.  Whether McGhee qualified for immunity from prosecution under Florida's "Stand Your Ground" law, *see* § 776.032, Fla. Stat., is a question of state law.  Accordingly, McGhee's claim is not cognizable in this federal habeas proceeding.  *See Branan v. Booth*, 861 F.2d 1507, 1508 (11th Cir. 1988) ("[A] habeas petition grounded on issues of state law provides no basis for habeas relief.").  Even liberally reading McGhee's claim as one involving federal constitutional violations does not affect its cognizability.  *See id.*  ("This limitation on federal habeas review is of equal force when a petition, which actually involves state law issues, is 'couched in terms of equal protection and due process.'" (quoting *Willeford v. Estelle*, 538 F.2d 1194, 1198 (5th Cir. 1976))).

C.   Challenge To Attempted Second Degree Murder

Finally within Ground Three, McGhee attacks his conviction by challenging the validity of the offense of attempted second degree murder.  "[S]econd-degree murder . . . does not require proof that the defendant intended to kill the victim."  *State v. Montgomery*, 39 So.3d 252, 256 (Fla. 2010).  McGhee argues that it is illogical to recognize an attempt to commit a homicide offense that itself lacks an element of intent to kill.

When McGhee challenged the offense of attempted second degree murder on direct appeal, he failed to assert a deprivation of his federal rights.  (Doc. 8-4, Ex. 4).  Although McGhee cited several federal decisions in the course of his lengthy claim (*see id.* at doc. pp. 24, 32, 35), he did not argue that his conviction for attempted second degree murder

resulted in a violation of the United States Constitution. (*Id.*, doc. pp. 24-70). Because McGhee he did not alert the state appellate court that he intended to raise a federal claim, any federal claim is unexhausted. *See Pearson*, 273 Fed. App'x at 849-50. *See also Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) ("If state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution.") and *Jimenez v. Fla. Dep't of Corr*, 481 F.3d 1337, 1342 (11th Cir. 2007) ("[T]o exhaust state remedies fully the petitioner must make the state court aware that the claims asserted present federal constitutional issues.") (quotation omitted).

McGhee's inability to return to state court to raise a federal claim in a second appeal results in a procedural default. *See Smith*, 256 F.3d at 1138. To the extent McGhee intends to invoke the fundamental miscarriage of justice exception, he has not shown that it applies for the reasons addressed above. Nor does he show the applicability of the cause and prejudice exception. Therefore, McGhee's claim is barred from review. He is not entitled to relief on Ground Three.

Ground Four

McGhee alleges several instances of ineffective assistance in Ground Four. First, McGhee argues that trial counsel was ineffective in misadvising him not to testify. He claims that counsel failed to inform him that he carried the burden of establishing self defense; incorrectly told him that the jury would learn of his prior conviction for giving false information to an officer if he testified; and failed to tell him how critical his testimony and demeanor would be in a "credibility contest". McGhee contends that the trial court's limited colloquy was insufficient to dispel counsel's misadvice, and that his decision not to testify

therefore was not intelligently made.

To the extent McGhee raises the same argument that he brought in claim 8 of his postconviction motion, he cannot obtain relief. The state court denied McGhee's claim:

> Defendant's eighth claim alleges trial counsel provided affirmative misadvice that if he testified at trial, the nature of a prior conviction could be used to impeach his credibility. This claim alleges the prior conviction is a misdemeanor conviction for giving false information to law enforcement. This is not misadvice, and trial counsel did in fact provide the Defendant with a correct statement of law. See § 90.610(1), Florida Statutes ("A party may attack the credibility of any witness, including an accused, by evidence that the witness has been convicted of a crime if the crime . . . involved dishonesty or a false statement regardless of the punishment . . . .").
>
> Even though the Court finds no deficiency, as prejudice, the Defendant alleges the substance of what his purported testimony would be is the same raised in various claim[s] above, which have all been discussed and found to be without merit.
>
> Claim 8 is DENIED.

(Doc. 8-5, Ex. 15, doc. p. 111).

Initially, this Court defers to the state court's decision that counsel's advice on a matter of Florida evidentiary law was correct. *See Will*, 278 Fed. App'x at 908. Further, McGhee has not demonstrated that the court unreasonably applied the prejudice prong of *Strickland*, as he has not shown a reasonable probability that the outcome of trial would have been different had he testified. McGhee asserted that his testimony would have established self defense. He claimed that he would have explained his version of the events, discussed the alleged prior attack by Pawl, and clarified his statement to Detective Clark. (Doc. 8-5, Ex. 14, doc. pp. 95-98).

However, counsel argued self defense without McGhee's trial testimony. She argued that McGhee's statement, which he willingly gave to Detective Clark, established

that he acted in self defense. (Doc. 8-3, Ex. 1, Vol. 3, pp. 257-59). Counsel also attacked Pawl's credibility, argued that physical evidence–most notably the lack of a visible rip in Pawl's tent–contradicted Pawl's testimony, and argued that Pawl's version of events simply did not make sense. (Doc. 8-3, Ex. 1, Vol. 3, pp. 259-68). Further, as addressed above and as the state court pointed out within its order, evidence of a prior argument or fight could have been harmful to the defense because the State could have used such evidence to argue that McGhee acted with a depraved mind. Accordingly, McGhee does not show that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.

Second, McGhee claims that counsel hindered his right to participate in his defense by failing to give him depositions or to discuss with him the defense strategy, the burden of proof, the lesser-included offenses, and the essential elements of the crime. McGhee claims that if he had reviewed the discovery, he could have told counsel to secure various items of evidence, and could have identified prior inconsistent statements by witnesses. Instead, he claims, counsel failed to adequately cross-examine witnesses with such statements, and failed to present the evidentiary items.

To the extent he raises the arguments that he presented in claims 5 and 6 of his postconviction motion, McGhee cannot obtain relief. The state court denied claim 5, in which McGhee argued that if counsel had shared discovery with him before trial, he would have been able to assist in his defense as described above:

> Claim 5 alleges trial counsel was ineffective by precluding the Defendant from participating in the preparation and/or presentation of his defense. The Defendant alleges he was unable to view most of the discovery, and that trial counsel did not discuss strategy, legal standards, or prepare him to testify. Defendant also alleges he provided trial counsel with a list of steps he

wanted followed, none of which were.  To the extent these allegations are not discussed in claims raised with greater detail below, these allegations fail to raise any prejudice.

The Defendant then references items, most of which have been discussed in various claims above, that he believes trial counsel should have secured.  These include the tent where the victim was attacked, which as discussed above was entered into evidence; a test of the blood on the exterior of the tent, the relevance of which the Defendant has failed to allege; a purported surveillance video from Circle K, which as discussed above, the Defendant speculates as to the existence of such evidence, and of which there is no relevance; 911 transcripts, purportedly from the call he made, which as discussed above the Defendant has failed to allege any relevance; the text messages, which the Court assumes are the inadmissible hearsay statements to Bonnie Marvin discussed above; expert testing of all the blood in the case, the relevance of which the Defendant has failed to allege; and wound[ ]s on the Defendant's hands that he describes as defensive wounds, which would also be expected in a physical altercation where the victim resisted, as testified by the victim in this case.

Next the Defendant complains that he never received a copy of Mr. Pawl's deposition, which he would have been able to use to assist trial counsel in impeaching this witness none of which this Court finds as impeachable inconsistent statements.  First the Defendant alleges he would impeach a statement written in a police report with testimony given in a deposition, which would be improper at trial.  Next the Defendant alleges a statement of "I didn't even know he had it" is contradicted by the victim claiming the Defendant "snatched it up . . ."  These statements are in regards to the hatchet the Defendant used, and are not inconsistent.  The Defendant also would again attempt to improperly impeach a statement written in a police report with that given at a deposition regarding the placement of the victim's legs at the time the Defendant attacked him.  Finally, the Defendant would attempt to improperly impeach a witness regarding the placement of furniture in the camp prior to the incident, with photographs taken by law enforcement after the incident.

For the reasons discussed above, claim 5 is DENIED.

(Doc. 8-5, Ex. 15, pp. 110-11).

The state court also denied claim 6, in which McGhee again argued that if counsel had provided him the relevant information before trial, he would have been able to assist in his defense by identifying witnesses' prior inconsistent statements.  The state court

found, "Similar to claim 5, claim 6 alleges a failure to adequately cross-examine and/or impeach the State's witnesses. The Defendant references several statements, none of which appear to be direct prior inconsistent statements. As such claim 6 is DENIED." (Doc. 8-5, Ex. 13, doc. p. 55).

McGhee does not carry his burden of showing that the state court's decision was unreasonable under § 2254(d). Initially, McGhee cannot show that he was prejudiced as a result of his inability to alert counsel to various items of evidence as argued in claim 5 of the postconviction motion. For the reasons addressed by the state court, and as addressed in Ground Two, *supra*, McGhee has not established a reasonable probability of a different outcome even if he had brought these matters to counsel's attention and counsel had utilized them at trial. He fails to show that the state court's decision involved an unreasonable application of *Strickland* or was based on an unreasonable factual determination.

McGhee also fails to show that the state court unreasonably denied his claims concerning prior inconsistent statements. Initially, this Court defers to the state court's determination that Florida's evidentiary law would have counsel from addressing several of the alleged inconsistencies. *See Will*, 278 Fed. App'x at 908. Accordingly, McGhee does not show that counsel was ineffective with respect to those statements.

Further, McGhee fails to show ineffective assistance in not raising the other alleged prior inconsistent statements. Several of the statements, as presented in both claim 5 and claim 6, involve whether Pawl knew that McGhee was holding a hatchet or could see McGhee before the hatchet attack. McGhee claimed that Pawl stated at deposition that he "didn't even know [McGhee] had" the hatchet, and also stated that he could not see

McGhee from inside his tent. (Doc. 8-5, Ex. 12, doc. pp. 28-29). But, McGhee claims, Pawl also made inconsistent statements that he could see McGhee and that McGhee "snatched up the [hatchet]. And before I could react, he swung the hatchet through my tent . . ." (Doc. 8-5, Ex. 14, doc. p. 90). The state court's conclusion that these statements were not necessarily inconsistent was not unreasonable. And even if the statements are viewed as inconsistent, McGhee does not show a reasonable probability that impeaching Pawl on this basis would have changed the outcome of trial.

Next, McGhee asserts, as he did in claim 6, that Pawl made inconsistent statements about whether McGhee was holding both the hatchet and the pocketknife at the same time. McGhee claimed that Pawl stated he observed McGhee holding both weapons. He claims that Pawl also made the inconsistent statements that 1) Pawl observed McGhee wielding a knife after Pawl took the hatchet from McGhee and 2) that McGhee "came after" Pawl with a hatchet and then "came at" Pawl with a knife. (Doc. 8-5, Ex. 12, Doc. pp. 29-30). But, as the state court found, these statements are not inconsistent. They do not exclude the possibility that McGhee initially held both weapons and then only had the knife. Again, even if the statements were inconsistent, McGhee fails to show that he was prejudiced by counsel's failure to raise them.

Finally, McGhee argued in claim 6 that Hagestad made inconsistent statements about whether McGhee had accused Pawl of taking one of his beers. When asked at trial whether he had heard Pawl and McGhee arguing over beer, Hagestad answered that he had not. (Doc. 8-3, Ex. 1, Vol. 2, doc. p. 205). McGhee claims that the police report stated, "[McGhee] was accusing Pa[w]l of taking one of his beers." (Doc. 8-5, Ex. 12, doc. P. 30). It is not apparent that Hagestad in fact made inconsistent statements, as the quotation from

the police report does not specifically identify a statement attributed to Hagestad based on Hagestad's observations.  But even if Hagestad did make inconsistent statements, McGhee cannot establish prejudice because he has failed to show a reasonable probability that pointing out such a discrepancy would have affected Hagestad's credibility so as to result in a different outcome.  Accordingly, McGhee has not shown any prejudice as a result of counsel's alleged failure to provide him with discovery and to allow him to participate in his defense.  McGhee does not demonstrate that the state court unreasonably applied *Strickland* or unreasonably denied the facts in denying his claims.

Finally within Ground Four, McGhee alleges that counsel should have asked Pawl and the deputy who took the photos if they could identify the rip in the tent, and why there was no blood on the tent.  He also claims counsel should have asked law enforcement officers why the tent was not collected as evidence.  McGhee fails to show prejudice, and therefore is not entitled to relief, for the same reasons discussed in Ground Two, *supra*.  Accordingly, McGhee has not shown that the state court unreasonably applied *Strickland* or unreasonably determined the facts in denying his claim.  He is not entitled to relief on Ground Four.

Ground Five

McGhee argues that he is entitled to relief based on the cumulative effect of counsel's alleged errors.  The state court denied this claim because it had found all of McGhee's ineffective assistance claims "to be without merit."  (Doc. 8-5, Ex. 15, doc. p. 111).  McGhee does not show entitlement to relief under 28 U.S.C. § 2254(d).  *See Morris v. Sec'y, Dep't of Corr.*, 677 F.3d 1117, 1132 (11th Cir. 2012) ("Morris's cumulative error claim must fail . . . [N]one of Morris's individual claims of error or prejudice have any merit,

and therefore we have nothing to accumulate."); *United States v. Barshov*, 733 F.2d 842, 852 (11th Cir. 1984) ("Without harmful errors, there can be no cumulative effect compelling reversal."). Accordingly, Ground Five is denied.

It is therefore **ORDERED** that McGhee's petition (Doc. 1) is **DENIED**. The Clerk is directed to enter judgment against McGhee and to close this case.

### CERTIFICATE OF APPEALABILITY AND
### LEAVE TO APPEAL *IN FORMA PAUPERIS* DENIED

It is **ORDERED** that McGhee is not entitled to a certificate of appealability (COA). A prisoner seeking a writ of habeas corpus has no absolute entitlement to appeal a district court's denial of his petition. 28 U.S.C. § 2253(c)(1). Rather, a COA must first issue. *Id.* "A [COA] may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." *Id.* at § 2253(c)(2). To make such a showing, McGhee "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-El v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n.4 (1983)). McGhee has not made the requisite showing. Finally, because McGhee is not entitled to a COA, he is not entitled to appeal *in forma pauperis*.

**ORDERED** at Tampa, Florida, on July 26, 2019.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

Copies to:
Corey McGhee
Counsel of Record